UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| GLENN R. VALE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. _____ |
| VS. | § | |
| | § | |
| CHASE BANK USA, N.A. | § | |
| D/B/A CHASE, | § | Complaint |
| | § | With Jury Demand Endorsed |
| Defendant. | § | |

## COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff, Glenn R. Vale ("Plaintiff"), by counsel, and for his Complaint against the defendant, Chase Bank USA, N.A. d/b/a Chase ("Defendant" or "Chase") and states as follows:

## I. INTRODUCTION

1.    Plaintiff asserts claims against Defendant for the willful, knowing, and/or negligent violation of: 1) Chapter 41, the Consumer Credit Protection Credit Act, of Title 15 (Commerce and Trade) of the United States Code, specifically, 15 U.S.C. § 1681 et seq., (known as the Fair Credit Reporting Act, hereinafter referred to as the "FCRA") which relates to the dissemination of consumer credit and other financial information; 2) the Texas Debt Collection Act ("TDCA"); 3) Tex. Fin. Code § 392.001 *et. seq*. and 4) the common law tort of invasion of privacy, and seeks to recover actual, statutory, and punitive damages, legal fees and expenses against Defendant.

## II. PARTIES

2.    Plaintiff is a natural person residing in Collin County, Texas and he is a "consumer" as defined by the FCRA.

3.    Defendant is a national bank which may be served by delivering citation to its registered agent, CT Corporation System, 1999 Bryan St. Suite 900, Dallas, TX 75201.

4.    Defendant is a "person" and a "user" of consumer credit and other financial information, as said terms are defined and contemplated respectively, under the FCRA.

5.    Defendant is a "debt collector" as defined by Tex. Fin. Code § 392.001(6).

6.    Defendant is a furnisher of consumer credit information to Trans Union, LLC, Equifax, Inc., and Experian Information Solutions, Inc. ("Experian"), the three (3) national consumer reporting agencies.

## III. JURISDICTION AND VENUE

7.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 1334 and 1337(a) and 15 U.S.C. § 1681p and 28 U.S.C. §§2201-2202.

8.    Venue in this district is proper because the defendant transacts business in this district and Plaintiff resides in this district.

## IV. FACTUAL ALLEGATIONS

9.    On August 23, 2012, Plaintiff filed bankruptcy in case number 12-35408-sgj7 ("Bankruptcy Case") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division ("Bankruptcy Court").

10.   Prior to Plaintiff filing his Bankruptcy Case, Defendant asserted a pre-petition claim against Plaintiff in an attempt to collect a consumer debt allegedly owed by Plaintiff.  The

debt required Plaintiff to pay money arising out of transactions in which money, property, insurance, or services were the subject thereof and the same were primarily for personal, family, or household purposes.  In Plaintiff's bankruptcy petition, the claim was listed in Schedule "D" as a secured claim, such claim was secured by Plaintiff's prior home located at 408 Miller St., Mt. Vernon, TX 75457 (the "Property") and was identified as Account No. xxx5729 (the "Loan" or "Account").

11.     On August 23, 2012, Plaintiff filed a mailing matrix with the Bankruptcy Court that provided Defendant's correct address.

12.     On August 26, 2012, the Bankruptcy Noticing Center for the Bankruptcy Court mailed out the "Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors and Deadlines" to all creditors, including Defendant, and other parties based on the mailing matrix previously filed with the Bankruptcy Court.  This mailing constituted formal notice to the Defendant of the above Chapter 7 Bankruptcy.  This notice warned all creditors in conspicuous language against violating the automatic stay pursuant to 11 U.S.C. §362.

13.     On November 29, 2012, the Bankruptcy Court issued an order granting Plaintiff a discharge ("Discharge Order") (the said order followed Official Form B18, including the explanatory language contained therein).  The order discharged Plaintiff from any liability for Defendant's pre-petition claim.  Included with the Discharge Order was an explanation of the general injunction prohibiting Defendant and others holding pre-petition claims from attempting to collect the claims against Plaintiff.

14.     On November 30, 2012, the Bankruptcy Noticing Center for the Bankruptcy Court e-mailed a copy of the Discharge Order to Defendant and on December 2, 2012, by first class mail.  These mailings constituted formal notice to Defendant about Plaintiff's

discharge and the replacement of the automatic stay with the discharge injunction of 11 U.S.C. §524(a).  The Discharge Order and its notice warned all creditors, including Defendant, in conspicuous language that collection of discharged debts was prohibited. The Discharge Order and notice mailed to Defendant was not returned.  If the United States Postal Service has not returned the mailing of the Discharge Order and notice, or the email was not returned, there is a presumption that Defendant received the Discharge Order and notice sent to it by the Clerk of the Bankruptcy Court.  A copy of the Discharge Order is attached hereto as "Exhibit A" and is incorporated herein by reference.

15.    At no time has Defendant objected to or disputed the details of the Schedules filed in Plaintiff's Bankruptcy Case.

16.    At no time did Plaintiff reaffirm the debt at issue.

17.    At no time during the pendency of the Bankruptcy Case was Defendant's pre-petition claim declared to be non-dischargeable.

18.    Despite receiving communications from the Court and Plaintiff, Defendant, following the discharge in the Bankruptcy Case, engaged in debt collection activity against Plaintiff by (1) illegally accessing Plaintiff's consumer reports with one or more of the credit bureaus, and (2) misrepresenting the status of Plaintiff's Account to Experian credit bureau for the purpose of attempting to collect the discharged debt.

19.    Despite the change in the legal status of the Account upon discharge in the Bankruptcy Case, Defendant illegally accessed and reviewed Plaintiff's consumer reports and credit information with Experian, even though it had no permissible basis to take such action.

20.     On January 9, 2013, Defendant impermissibly accessed and reviewed Plaintiff's consumer report with Experian.

21.     On March 8, 2013 Defendant impermissibly accessed and reviewed Plaintiff's consumer report with Experian.

22.     On May 10, 2013 Defendant impermissibly accessed and reviewed Plaintiff's consumer report with Experian

23.     On July 10, 2013 Defendant impermissibly accessed and reviewed Plaintiff's consumer report with Experian.

24.     On July 23, 2013 Defendant impermissibly accessed and reviewed Plaintiff's consumer report with Experian.

25.     On September 9, 2013 Defendant impermissibly accessed and reviewed Plaintiff's consumer report with Experian.

26.     On October 25, 2013 Defendant impermissibly accessed and reviewed Plaintiff's consumer report with Experian

27.     On November 8, 2013 Defendant impermissibly accessed and reviewed Plaintiff's consumer report with Experian.

28.     On November 15, 2013 Defendant impermissibly accessed and reviewed Plaintiff's consumer report with Experian.

29.     On January 9, 2014 Defendant impermissibly accessed and reviewed Plaintiff's consumer report with Experian.

30.     On February 21, 2014 Defendant impermissibly accessed and reviewed Plaintiff's consumer report with Experian

31.     On March 7, 2014 Defendant impermissibly accessed and reviewed Plaintiff's consumer report with Experian.

32.     On March 17, 2014 Defendant impermissibly accessed and reviewed Plaintiff's consumer report with Experian.

33.     True and correct copies of relevant portions of Plaintiff's Experian credit reports showing the impermissible account reviews and inaccurate reporting are attached hereto as Exhibit "B."

34.     The purpose for accessing Plaintiff's consumer reports was allegedly to "complete a mortgage application" or "to monitor" its accounts;" yet, neither of these were legitimate purposes and Defendant in actuality was trying to collect a debt in violation of the discharge injunction.  If it denies that this was the purpose, then Defendant was trying to gain access to Plaintiff's personal financial information which is protected by law.

35.     This illegal access to Plaintiff's consumer reports by Defendant has occurred as recently as March 17, 2014, long after the discharge of the debt at issue and the foreclosure of the Property, which occurred on November 27, 2013.

36.     The conduct of Defendant has proximately caused Plaintiff past and future monetary loss, past and future mental distress and emotional anguish, and other damages that will be presented to the jury.

37.     Defendant knew and continues to know that the automatic stay and the discharge order means the debt is no longer collectible, but Defendant has made a corporate decision to willfully and maliciously act contrary to its knowledge in its calculated decision to violate Plaintiff's right to privacy by impermissibly accessing Plaintiff's credit reports during the pendency of the Bankruptcy Case and after the discharge was granted.

38.     After a reasonable time for discovery, Plaintiff believes he will be able to show that despite receiving dozens, if not hundreds, of disputes complaining that Defendant was illegally accessing consumer reports for account holders whose debts with Defendant had been discharged in bankruptcy, Defendant intentionally and knowingly has not corrected its policy of doing so.

39.     After a reasonable time for discovery, Plaintiff believes he will be able to show that all actions taken by employees, agents, servants, or representatives of any type for Defendant were taken in the line and scope of such individuals' (or entities') employment, agency, or representation.

40.     After a reasonable time for discovery, Plaintiff believes he will be able to show that all actions taken by Defendant at issue were performed maliciously, wantonly, recklessly, intentionally or willfully, and were done with either the desire to harm Plaintiff and/or with the knowledge that its actions would very likely harm Plaintiff and/or that its actions were taken in violation of the law.

41.     After a reasonable time for discovery, Plaintiff believes he will be able to show that Defendant has engaged in a pattern and practice of wrongful and unlawful behavior with respect to accounts and consumer reports, and Defendant is subject to punitive damages, statutory damages, and all other appropriate measures to punish and deter similar future conduct by Defendant and similar companies.

## V.  GROUNDS FOR RELIEF - COUNT I

## FAIR CREDIT REPORTING ACT (FCRA 15 U.S.C. §1681 *et. seq*)

42.     Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

7

43.    The FCRA establishes very specific rules limiting when and why an entity can obtain a consumer report:

(f)  Certain use or obtaining of information prohibited. – A person shall not use or obtain a consumer report for any purpose unless –

(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and

(2)  the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

*See* 15 U.S.C. § 1681b (f).

44.    Section 1681b(a)(3) lists the all-inclusive purposes for which a consumer report can be obtained:

(a) In General. – * * * [A] consumer reporting agency may furnish a consumer report under the following circumstances and no other:

***

(3)  To a person which it has reason to believe –

(A)   intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer;

***

(F)  otherwise has a legitimate business need for the information * * *

(ii)  to review an account to determine whether the consumer continues to meet the terms of the account.

8

*See* 15 U.S.C. § 1681b (a)(3).

45.     On at least thirteen (13) occasions after the Discharge Order was signed and entered in Plaintiff's Bankruptcy Case, Defendant requested and obtained Plaintiff's consumer report from Experian.

46.     On such occasions, Defendant represented to Experian that such requests were made to "complete a mortgage application" or "to monitor" its accounts.

47.     When requesting and obtaining Plaintiff's consumer report and credit information from Experian, as described herein, Defendant had actual knowledge that it did not have a permissible purpose to obtain such information.

48.     Defendant has actual knowledge that as of the filing of Plaintiff's Bankruptcy Case and its subsequent discharge, the Account was closed and Defendant was legally prohibited from pursuing any collection against it or communicating with Plaintiff about the Account and the underlying discharged debt to justify an account review of Plaintiff's credit information.   As such, Defendant had actual knowledge that it did not have a permissible purpose to access Plaintiff's consumer reports with the credit bureaus at all times post-discharge.

49.     At the time Defendant impermissibly accessed Plaintiff's consumer reports, Defendant had actual knowledge that Plaintiff had not requested new credit from it, nor had he initiated a credit transaction with Defendant at any time since his bankruptcy filing or discharge.   As such, Defendant had actual knowledge that it did not have a permissible purpose to access Plaintiff's consumer reports and credit information as it did.

50.     Defendant had actual knowledge that Plaintiff did not authorize access and reviews of his consumer report by Defendant subsequent to his bankruptcy discharge.   As such,

Defendant had actual knowledge that it did not have a permissible purpose to access Plaintiff's consumer reports and credit information when it engaged in such action.

51. For Defendant to repeatedly request and obtain Plaintiff's private personal and financial information, in the face of actual knowledge that it had no permissible purpose to do so, constitutes its knowing and willful violations of the FCRA.

52. After a reasonable time to conduct discovery, Plaintiff believes he can prove that Defendant requested and obtained Plaintiff's private personal and financial information from the credit bureau(s) for the illegal purpose of attempting to collect on the underlying discharged debt.

53. After a reasonable time to conduct discovery, Plaintiff believes he can prove that Defendant used false pretenses, namely the representation that it intended to use Plaintiff's consumer report for account review or collection purposes, to obtain Plaintiff's private personal and financial information for the illegal purpose of attempting to collect on the underlying discharged debt.

54. After a reasonable time to conduct discovery, Plaintiff believes he can prove, additionally and/or in the alternative, Defendant is unwilling or unable to prevent its system from requesting and obtaining Plaintiff's consumer report without a permissible purpose, thereby subjecting Plaintiff to having his private, personal and financial information disclosed without his consent, authorization or other legal justification.

55. As a direct and proximate result of Defendant's conduct as outlined above, Plaintiff has suffered, and will continue to suffer, substantial injury, including, but not limited to, mental anguish and emotional distress from the ongoing invasion of his privacy, entitling

Plaintiff to an award of actual damages in an amount to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

56.     Defendant's actions at issue have caused Plaintiff to suffer embarrassment, mental anguish, inconvenience, and other pecuniary and non-pecuniary damages.

57.     Defendant's conduct reveals a conscious and reckless disregard of Plaintiff's rights.  The injuries suffered by Plaintiff were attended by circumstances of fraud, malice, and willful and wanton misconduct entitling Plaintiff to punitive damages pursuant 15 U.S.C. § 1681n(a)(2).

## VI. GROUNDS FOR RELIEF - COUNT II

## TEXAS FINANCE CODE - UNFAIR DEBT COLLECTION

58.     Plaintiff repeats, re-alleges, and incorporates by reference all paragraph as above as if fully rewritten here.

59.     Defendant has violated the Texas Finance Code in numerous ways including, but not limited to, the following:

a)     Tex. Fin. Code § 392.301(a)(8), which prohibits Defendant from taking an action prohibited by law, since the FCRA prohibits the pulling of a credit report without a valid purpose;

b)     Tex. Fin. Code § 392.304(a)(8), which prohibits Defendant from misrepresenting the character, extent, or amount of Plaintiff's debt, or misrepresenting the status of Plaintiff's debt in a judicial or governmental proceeding, since Defendant alleged the justification for pulling the reports was an "account review" or "other business transaction," that was a misrepresentation of the status of debt at issue; and

c)   Tex. Fin. Code § 392.304(a)(19), which prohibits Defendant's use of false representations or deceptive means to collect a debt, since the debt at issue had been discharged in Plaintiff's Bankruptcy Case and there were no other transactions between the parties, the only conclusion that can be drawn is Defendant was trying to gather information for an attempt to collect the debt at issue in violation of the discharge injunction.

60.   Under Tex. Fin. Code Ann. § 392.403, the said violations render Defendant liable to Plaintiff for actual damages, statutory damages, for injunctive relief, costs, and reasonable attorney's fees.  Plaintiff's injuries resulted from Defendant's gross negligence, malice, and/or actual fraud, which entitle Plaintiff to punitive damages.

61.   Due to Defendant's conduct, Plaintiff was forced to hire counsel and his damages include reasonable attorney's fees incurred in prosecuting this claim.

## VII. GROUNDS FOR RELIEF - COUNT III

## INVASION OF PRIVACY

62.   Plaintiff restates and reiterates herein all previous paragraphs.

63.   Defendant's conduct, as described herein, when it acquired copies of Plaintiff's consumer reports constituted an invasion of Plaintiff's private affairs.  The invasion was one that would be highly offensive to a reasonable person because confidential and sensitive personal and financial information is included a consumer report.  Such wrongful acts caused injury to Plaintiff which resulted in extreme emotional anguish, loss of time, and inconvenience.

Plaintiff's injuries resulted from Defendant's malice which entitles Plaintiff to exemplary damages under Texas Civil Practice and Remedies Code §41.003(a).

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Glenn R. Vale, prays that the Court will:

A.      Enter judgment in favor of Plaintiff and against Defendant for statutory damages, actual damages, costs, and reasonable and necessary attorney fees as provided by the TDCA, the FCRA, and for the multiple invasions of privacy.

B.      Find that appropriate circumstances exist for an award of punitive damages to Plaintiff;

C.      Award Plaintiff pre-judgment and post-judgment interest as allowed by law; and

D.      Grant such other and further relief, in law or equity, to which Plaintiff might show him justly entitled.

Respectfully submitted,

_____/s/ James J. Manchee_____
James J. Manchee
Jim@mancheelawfirm.com
State Bar Number 00796988
Marilyn S. Altamira
State Bar Number 00796119
Maltamira@mancheelawfirm.net
Manchee & Manchee, PC
12221 Merit Drive, Suite 950
Dallas, Texas 75251
(972) 960-2240 (telephone)
(972) 233-0713 (fax)

ATTORNEYS FOR PLAINTIFF

## **JURY DEMAND**

Plaintiff hereby demands a trial to a jury on all issues so triable.

9-17-14                                        /s/ *James J. Manchee*
Date                                              James J. Manchee